Steadman, J.
Background:
The plaintiff Kimbra Dennis (“Dennis”) brings this action against her employer, The Boston Company, Inc. (“TBC"), under G.L.c. 151B and G.L.c. 93, §102. The plaintiff asserts that the defendant discriminated against her because of her race by firing her on June 22, 1990. The defendant asserts that she was discharged from her position because of her unsatisfactory performance.
The defendant now moves for summary judgement on all counts of the plaintiffs complaint.
Discussion:
Dennis was hired by TBC as a Quality Clerk on November 14, 1988. When the Quality Department was eliminated for business reasons in February 1989, each employee in the department was laid off. Shortly after Dennis was laid off, Mary Dickerson, the Manager of Administrative Services, offered her the opportunity to interview for a position in the payroll department.
Mary Dickerson and Kim Magri, the payroll supervisor, interviewed Dennis for the position of senior payroll assistant. This job entailed general payroll processing, data entry of new hire information, status changes, pay increases and terminations; processing bonuses; balancing and editing payroll; and assisting with employee inquiries. After Ms. Magri and Ms. Dickerson had considered all of the applicants for the position, they decided to hire Dermis.
TBC sent Dennis to a two-day training class on the software package used in the payroll department in July 1989. This training provided an “overall view of the package,” and gave her written materials which she took home and read. Despite this training, Ms. Dennis made mistakes in processing premier achievement awards, keying memo pays, and getting support checks issued on time. She also failed to report that the general ledger for a company was out of balance and incorrectly processed an employee transfer.
In September 1989, Ms. Dennis was placed on probation because of her excessive errors and because her supervisor believed that she was overly defensive in responding to constructive criticism. Ms. Dennis was told that her performance had to improve or her employment might be terminated.
In January 1990, Ms. Magri gave her an overall evaluation of “satisfactory.” In that evaluation, Ms. Magri counselled Ms. Dennis that she needed to concentrate and apply attention to detail more efficiently, and carry things through completely. Following this evaluation, Ms. Dennis’s performance deteriorated.
On February 9, 1990, Ms. Dennis failed to ensure that the Direct Deposit Account job was run. This resulted in TBC overdrawing that account and thousands of employees not having access to their pay for at least twenty-four hours. In early March 1990, Ms. Dennis made mistakes in processing the quarterly bonus payments to four employees. The amounts of these errors were $87,731.20, $87,167.49, $14,452.20 and $14,452.20. Dennis made errors in bonus payments to three employees in mid-March 1990. The amounts of these errors were $16,815.26, $67,404.26 and $4,302.43. In March 1990, Ms. Magri and Ms. Dickerson met with Ms. Dennis to discuss these serious errors and told her that they could not continue. Ms. Dennis was given another written warning about her performance problems.
Ms. Dennis was discharged from her position on June 22, 1990, and informed at that time that the reason for her termination was poor performance, that she had made too many errors. In early July 1990, Ms. Magri requisitioned for a replacement for Ms. Dennis. After the requisition was approved, Ms. Magri and Ms. Dickerson interviewed and selected Marcie Scott, a black woman.
Rulings:
The function of the court in determining the validity of this motion is similar (but not identical) to the court’s responsibility in ruling on a motion for a directed verdict.
It is not intended to be used, nor should it be, as a vehicle for “trial by affidavit.” Henshaw v. Cobeceiras, 14 Mass.App.Ct. 225 (1982). The purpose is to determine if there are any real fact issues to be decided.
Accordingly, the defendant has the burden to affirmatively demonstrate that there is no genuine issue of material fact raised by the pleadings. Attorney General v. Bailey, 386 Mass 367 (1982). If the defendants can do that, then they are entitled to summary judgment as a matter of law. Community National Bank v. Dawes, 369 Mass. 550 (1976). Once the moving party shows that there is no genuine issue for trial, the opposing party must respond and allege specific facts which establish that there is a genuine triable issue. We are instructed that “[A] toehold ... is enough to survive a motion for summary judgment.” Marr Equipment Corp. v. I.T.O. Corp., 385 Mass. 1001 (1982).
A moving party upon whom the burden of proof does not rest at trial need not negate or disprove an essential element of the claim of the party on whom the burden of proof at trial will rest, but must only demonstrate that proof of that element at trial is unlikely to be forthcoming. Kourouvacilis v. Gen. Motors, 410 Mass. 706 (1991).
The cases cited are instructive and teach that summary judgment is awarded properly, “if the pleadings, depositions, answers to interrogatories, and admis *235 sions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving parly is entitled to a judgment as a matter of law.” Mass.R.Civ.P. 56 (c). Anthony’s Pier Four, Inc. v. Crandall Dry Dock Engineers, Inc., 396 Mass. 818, 822 (1986).
The moving party assumes the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue, even if he would have no burden on an issue if the case were to go to trial. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989); Attorney General v. Bailey, 386 Mass. 367, 371 (1982); Doherty v. Hellman, 406 Mass. 330, 333 (1990).
In preparing to rule on this motion for Summary Judgment, I have assumed that all the facts set forth in the opposing party’s affidavits are true, and that any reasonable inferences raised therein and favorable to that party are resolved in his favor. Coveney v. President and Trustees of the College of the Holy Cross, 388 Mass. 16, 17 (1983). I have reviewed all the affidavits and I have evaluated them to determine whether the affiants would be competent to testify to the matters contained therein. Sweda International, Inc. v. Donut Makers, Inc., 134 Mass.App.Ct. 914, 430.
Discrimination:
Ms. Dennis alleges that TBC discharged her because of her race in violation of G.L.c. 151B, §4(1) and G.L.c. 93, §102, the Massachusetts Equal Rights Act (“MERA”). Under the traditional disparate treatment analysis applied to individual discriminatory discharge claims, Ms. Dennis must initially present a prima facie case of discrimination by showing that:
(1) she is a member of a racial minority;
(2) she was qualified for the position she held;
(3) she was discharged; and
(4) after she was discharged TBC filled her position with someone of another race.
Sarni Original Dry Cleaners, Inc. v. Cooke, 388 Mass. 611, 615 (1983). See also Marks v. Prattco, Inc., 607 F.2d 1153 (5th Cir. 1979). If Dennis can raise an inference of discriminatory treatment by establishing her prima facie case, under the next step of this analysis TBC merely has to articulate some legitimate, non-discriminatory reason for discharging her. Wheelock College v. Mass. Commission Against Discrimination, 371 Mass. 130, 138 (1976); Lewis v. Area II Homecare for Senior Citizens, Inc., 397 Mass. 761, 765 (1986). This burden is one of production only and not of persuasion. Lewis, 397 Mass. at 765.
Once TBC meets this burden, it will be entitled to summary judgment on Ms. Dennis’s race discrimination claims unless she can point to specific facts which would “prove that the explanation given by TBC is a pretext, that is, it lacks reasonable support in evidence or is wholly disbelievable.” Lewis, 397 Mass. at 765; Wheelock, 371 Mass, at 138-39. It is not enough for a plaintiff to cast doubt on the wisdom of the employer’s decision, Villaneuva v. Wellesley College, 930 F.2d 124, 127-28 (1st Cir. 1991), or “impugn its veracity.” Mesnick v. General Electric Co., 950 F.2d 8186, 824. “Courts may not sit as super personnel departments, assessing the merits — or even the rationality — of employers’ non-discriminatory business decisions.” Id. at 825. The plaintiff must “elucidate specific facts which would enable [the trier of fact] to find that the reason given is not only a sham, but a sham intended to cover up the employer’s real motive . .. discrimination.” Id. at 824 (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 9 (1st Cir. 1990). In short, plaintiff must, through affidavits, deposition testimony and other material appropriate under Rule 56(c), convince this court that she has sufficient evidence to prove that TBC’s assessment of her performance was not “a good faith judgment” and that, “but for” her race, TBC would not have terminated her employment. Brunner v. Stone & Webster Engineering Corp., 413 Mass. 698, 705 (1992). Ms. Dennis fails to establish a prima facie case of discrimination because TBC replaced her with a black woman.
Dennis has a “reasonable expectation” of establishing the first three elements of her primafacie case. Ms. Dennis is undisputedly a member of a protected class; she was arguably qualified for her position; and she was discharged by TBC on June 22, 1990. The fourth element, however, presents a hurdle Ms. Dennis cannot clear.
To complete her prima facie case, Dennis must show that she was replaced by a non-minority. See Marks v. Prattco, Inc., 607 F.2d 1153, 1155 (5th Cir. 1979). Dennis, however, was replaced by Marcie Scott, a black woman.
It is true that an employer would not likely issue a policy statement that certain employees will be terminated because of their age. Johansen v. NER Comten, Inc., 30 Mass.App.Ct. 294 (1991). The court is further aware that unlawful discrimination can rarefy be established by direct evidence. Wheelock, supra.
In addition to being unable to establish an inference of discriminatory treatment through the traditional prima facie method, Dennis presents no other evidence to create the inference of discrimination.
There is no difference between the remedies afforded to the plaintiff under G.L.c. 151B and G.L.c. 93 §103. The protection under c. 15IB are greater then those provided under c. 93, §103. Napolitan v. N.E. Tel. & Tel., 1993 WL 65093 (D.Mass.).
CONCLUSION
Accordingly, the defendant’s motion for summary judgment is allowed on all counts.