Cowin, J.
BACKGROUND
This is an action for employment discrimination based on handicap under M.G.L.c. 151B, §4(16). Plaintiff alleges that he was employed by The Flatley Company at its Sheraton Tara Hotel in Newton from September 1989 until March 1990 as a house person. He claims he was discharged in violation of c. 15 IB §4(16) because of a physical handicap, i.e. alcoholism, and he seeks damages for lost earnings and emotional distress. Defendant claims that plaintiff agreed to the termination and that plaintiff has not met his burden to show a discriminatory motive for the termination.
This case was heard in a two-day jury-waived trial on June lOand June 11, 1993. At trial, it was agreed that the issue of damages would be bifurcated until after a decision on the merits. At the conclusion of the trial, the parties were allowed an additional thirty days to file post-trial briefs in lieu of oral argument. Those were submitted July 12, 1993. Plaintiff filed an additional reply brief July 15, 1993.
The plaintiffs witnesses at trial were plaintiff; Dr. Lance Dodes, an expert in the treatment of addictions; and Louise Keames of the Boston College Legal Assistance Bureau. The defense witnesses were Caryn De-Bonville, Director of Personnel at the Sheraton-Tara in Newton at the relevant time; Patrick Brogan, the General Manager at the time of plaintiffs termination; and Linval Bruce, plaintiffs supervisor.
FINDINGS OF FACT
Based on the evidence presented at trial, the reasonable inferences to be drawn therefrom and evaluation of the credibility of the witnesses, I find as follows.
1. Plaintiff Donald R. Perkins, Jr. (“Perkins”) is an individual residing in Boston, Massachusetts. Perkins was employed as a house person for Flatley at the Hotel from September 25, 1989 until March 26, 1990. Perkins’s responsibilities as house person included cleaning and maintaining the hotel’s public spaces, rest rooms, office spaces and other areas. He was also required to provide service to guests as necessary and in accordance with Tara Hotel standards.
2. Defendant Thomas J. Flatley d/b/a The Flatley Company (“Flatley”) is a sole proprietorship with its principal place of business at 50 Braintree Office Park, Braintree, Massachusetts. At all times relevant to the facts in this matter, Flatley owned and operated the Sheraton Tara Hotel (“Hotel”) in Newton, Massachusetts, which Hotel had more than six employees and was an “employer” within the meaning of M.G.L.c. 151B, §4(16).
3. Plaintiff, who was 52 years of age at the time of trial, has a history of alcohol abuse dating from the 1960s. He was treated for alcohol abuse numerous times between 1974 and 1977. He maintained sobriety from 1977 until 1987, when he began to abuse alcohol following marriage difficulties. After treatment, he regained sobriety in February 1989. He relapsed again in March 1990 for one week.
4. Prior to his employment with the Hotel, Perkins worked as custodian, and for a time, head custodian, at Brandéis University. Brandéis University provided him with a very good reference. He was terminated, however, for excessive absenteeism.
5. Although Perkins agreed that he had been absent at Brandéis due to his drinking problem, Perkins challenged Brandeis’s termination of him through a union grievance procedure.
*280 6. When Perkins applied for the Hotel position, he did not indicate that he had been fired. He simply stated that his reason for leaving was “personal.” He also failed to indicate that he had been demoted from head custodian back to custodian.
7. The Flatley Company’s employees’ guidebook provides, inter alia, policies regarding employment. In this regard, the guidebook states that “repeated tardiness and/or absenteeism is a sign of unreliability and may result in disciplinary action and/or termination. Three or more excused or unexcused absences during a six-month period may result in termination of employment.” In addition, the employee guidebook sets forth various “employee rules and regulations,” which indicate that “any of the following acts may result in disciplinary action and/or termination of employment:
. . . possession or consumption of alcoholic beverages or drugs on company time or premises.
. . . failure to report for work on three (3) consecutively scheduled work days without notifying your immediate supervisor (voluntary resignation).”
8. More than one-half of plaintiffs time as a house person was in view of the public. Plaintiff was in contact with hotel guests on an almost daily basis, either greeting guests or providing directions or other information about hotel facilities or services. He could come into contact with guests almost anywhere during the course of a working day, e.g., in the lobby, in the restrooms located on the main floor or in the corridors located in the guest rooms, and such contact could occur anytime during his shift.
9. Plaintiffs responsibilities also included using certain items of cleaning equipment, which, if not operated properly, posed problems of safety to hotel guests, personnel and property. Specifically, plaintiff was required to operate a large buffer that required significant strength and balance for proper operation. Moreover, plaintiff also worked with strong cleaning solutions which, if spilled, would damage fabric or cause minor skin burns.
10. Plaintiff performed very well as a house person during his first three months at the Hotel. He received an excellent review from his supervisor Linval Bruce on December 6, 1989 and was given a small raise.
11. Beginning approximately in January 1990, plaintiffs performance as an employee began to deteriorate. He missed more time from work than expected and the quality of his cleaning habits and his appearance declined. Plaintiff consistently needed to be reminded to put “wet floor” signs out when washing the floor in the public restrooms located on the main floor or in the employees’ cafeteria.
12. Mr. Bruce, plaintiffs supervisor, spoke to the plaintiff about these problems but they did not improve. Plaintiffs work performance continued to deteriorate.
13. On March 4, 1990, plaintiff suffered a relapse and became intoxicated.
14. As a result of his intoxicated state, plaintiff failed to report for work on three consecutive working days, and on the third day called in late, after his shift had already begun. During this conversation on the third day that he missed from work, plaintiff disclosed that he was “in the hospital” and would miss work for some time. In a separate conversation with Ms. De-Bonville, plaintiff requested an opportunity to meet with her to discuss the fact that he had been abusing alcohol and needed help.
15. Plaintiff met with Ms. DeBonville on March 8, 1990 at the hotel.' Plaintiff appeared at the meeting looking disheveled and was carrying a bottle of liquor in his jacket pocket. He was in noticeable distress and began crying at various points during his conversation with Ms. DeBonville.
16. Although plaintiff had violated two rules of company policy which would have merited immediate termination (being a "no call, no show” for three consecutive working days and bringing alcohol to the company premises), plaintiffs employment at that time was not terminated. Ms. DeBonville advised plaintiff that she would continue to keep his position open for a short period of time, during which time plaintiff was to enter a detoxification program. Plaintiff indicated that he intended to enter such a program the following Monday, March 12, 1990, and apologized to Ms. DeBonville for appearing on the company’s premises in such a condition.
17. Ms. DeBonville advised plaintiff that, upon completion of the detoxification program, he would have to meet with her and with Patrick Brogan, the general manager of the hotel, regarding his return to work. Plaintiff voiced no objection to such an interview.
18. Following his meeting with Ms. DeBonville, plaintiff proceeded to become intoxicated again during the next three and one-half days. Plaintiff entered a detoxification program at the Waltham-Weston Hospital on March 12, 1990.
19. Plaintiff remained at the Waltham-Weston Hospital until his discharge on March 23, 1990. Plaintiffs “Condition on Discharge" from that facility was described by Luis Sanchez, M.D., his attending physician, as follows: “Detoxification completed. Feeling much better about himself. Self-esteem was improved. Verbal and in good spirits. Mental status stable. No overt depression. Cognitively intact.”
20. Neither Dr. Sanchez nor any other health care provider associated with the Waltham-Weston Hospital was familiar with the Sheraton-Tara Hotel in Newton or the precise nature of all of plaintiffs duties as a “house person.” No one associated with the hospital was aware of the amount of plaintiffs guest contact or *281 of the safety-related issues associated with plaintiffs performance of his duties.
21. During the time that plaintiff was undergoing detoxification at the Waltham-Weston Hospital, he was in telephone contact with Ms. DeBonville on more than one occasion. During these conversations, Ms. De-Bonville advised plaintiff that his position was still being held open until he ended detoxification.
22. Ms. DeBonville specifically requested that plaintiff provide her with a medical certification relating to his ability to return to work. Plaintiff agreed to do so, and a meeting was scheduled with Ms. DeBon-ville and Mr. Brogan for March 26, 1990.
23. Plaintiff met with Ms. DeBonville and Mr. Brogan, as scheduled, at the Hotel of March 26, 1990. Plaintiff appeared in much better physical shape then he had appeared at the March 8, 1990 meeting with Ms. DeBonville. However, he was still noticeably shaky and his eyes began to tear at various points during the meeting.
24. When asked by Ms. DeBonville whether he was ready to return to work, plaintiff replied that he was not yet ready to do so and that he did not yet feel strong or confident. During the conversation, plaintiff referred to himself as a “lousy drunk.”[1]
25. When Ms. DeBonville asked plaintiff when he would be able to return to work, plaintiff said that he did not know. He said he did not know if he would ever be ready to return to his job.
26. Despite Ms. DeBonville’s request that he do so, plaintiff did not bring with him any medical certification verifying that he was ready to return to work. Plaintiff stated that he would have stayed longer in the detoxification program, but he was not allowed to continue in it. At the meeting, Mr. Brogan stated that he and Ms. DeBonville had a responsibility to the other employees of the hotel, as well as to the guests of the hotel, to operate the hotel safely and in a socially appropriate manner for the functioning of the business. Plaintiff indicated that he understood these concerns. Mr. Brogan also asked plaintiff how he would feel about working with other employees who were apparently aware of his problem with alcohol abuse, and plaintiff stated that he would be very embarrassed to work with his fellow employees under those conditions.
27. As a result of plaintiffs own comments, his failure to provide a timetable, his failure to provide adequate medical verification, and concern that plaintiff could not perform the essential functions of a “house person,” Ms. DeBonville and Mr Brogan indicated that it was not appropriate for plaintiff to return to work. Plaintiff agreed with this assessment. There was a mutual understanding that his employment would be terminated.
28. Mr. Brogan offered to try to obtain employment for plaintiff at another Tara hotel when he was ready to take on such a position. Ms. DeBonville indicated that she would contact other Tara hotels to determine whether they had available other less challenging positions that involved less contact with guests, so-called “back of the house” positions.
29. At no time during this conversation did either Ms. Debonville or Mr. Brogan refer to plaintiff as a “drunk,” nor did either of them indicate at any time that they did not wish to have a “drunk” working at the hotel. Their treatment of plaintiff throughout the course of the meeting was professional and conducted as humanely as possible, given the sensitivity of the circumstances.
30. At the time of the meeting, plaintiff was not capable of performing the essential functions of his job as a house person. He was not “otherwise qualified” for that job at that time. He provided no medical verification clearing him to return to work, notwithstanding the fact that he had been specifically requested to provide such information. Although he was in significantly better condition than he had been prior to his detoxification, plaintiff still did not outwardly manifest sufficient physical capabilities to meet the requirements of his job.
31. The Flatley Company afforded plaintiff reasonable accommodation by permitting him to undergo detoxification treatment, notwithstanding the fact that it would have been fully justified in terminating his employment for two separate reasons. He could have been terminated either for being a “no call, no show” for three consecutive work days or for bringing alcohol onto the premises.
32. Since plaintiff provided no schedule for his ability to return to work, The Flatley Company lacked sufficient information to make an intelligent determination how long he would be unavailable for duty. Plaintiff did not request further time to recover so that he could return to work. Indeed, he stated that he did not know if he would ever be able to return to work.
33. Perkins suffers from the disease of alcoholism.
34. Perkins is a handicapped person under M.G.L.c. 151B, §4(16).
35. Perkins was not terminated because of his disability.
36. Defendant terminated Perkins with Perkins’s assent.
36. Defendant terminated plaintiff for a legitimate non-discriminatory reason.
RULINGS ON PLAINTIFF’S REQUESTS FOR RULINGS OF LAW
1. M.G.L.c. 151B, §4(16) provides that it shall be unlawful for any “employer:”
To refuse to hire, ... or advance in employment or otherwise discriminate against, because of his handicap, any person alleging to be a qualified *282 handicapped person, capable of performing the essential functions of the position involved.
2. To prevail in his claim of handicap discrimination, a plaintiff must first present a prima facie case demonstrating that: (1) he is handicapped: (2) that he is “otherwise qualified” for the position in question; and (3) that he was terminated from his position or otherwise adversely affected. See generally, Cox v. New England Telephone and Telegraph Co., 414 Mass. 375 (1993) (applying M.G.L.c. 151B in a case alleging discrimination on the basis of handicap).
3. If the plaintiff presents a prima facie case, the defendant has the burden of going forward and proving that plaintiff was not an otherwise qualified handicapped person or that his rejection was for reasons other than his handicap.
4. Assessments of an employee’s qualifications should be based on “reasoned and medically sound judgments.” School Board of Nassau, Florida v. Arline, 480 U.S. 273, 288 (1987).
5. Alcoholism cases are analyzed in the same way as other handicap discrimination cases and, as stated earlier, once the prima facie case is established, the employer has “the burden of showing that the plaintiff was not qualified to hold his position.” Ham v. State of Nevada, 788 F.Supp. 455, 2 A.D. Cases 134 (D.Nev. 1992).
6. In rebutting the inference of discrimination, an employer may not justify its discharge of an employee based on past instances of alcohol abuse.
7. A decision must be made in each case of whether it is unlawful for an employer to terminate an employee who is being rehabilitated.
8. Where an employee has participated in a treatment program and seeks his job back, the employer must provide that job back unless it can be shown that he is unable to perform the job.
9. Even if an employee is currently drinking, the doctrine of reasonable accommodation requires an employer, before discharging, to afford an employee the reasonable accommodation of rehabilitation treatment in the context of the requirements of the position, if such treatment would enable the employee to perform the duties of the job and become rehabilitated.
10. In March 1990, M.G.L.c. 151B, §1 (17) provided: ‘The term ‘handicapped person’ means any person who has a physical or mental impairment which substantially limits one or more of such person's major life activities,[2] has a record of such impairment, or is regarded as having such impairment.”
11. Alcoholism is a handicap under M.G.L.c. 151B, §1(19).
12. M.G.L.c. 151B, §1(16) defines a “qualified handicapped person” as a handicapped person “who is capable of performing the essential functions of a particular job, or who would be capable of performing the essential functions of a particular job with reasonable accommodation to his handicap.” Reasonable accommodation does not require an employer to disregard or waive an employee’s inability to perform an essential function of the job. Cox v. New England Telephone, supra at 383.
13. Employment decisions regarding handicapped persons’ qualifications must be reasonably made and must be informed decisions. Incapacity must be shown and cannot be assumed.
14. Circumstances that arise months after a decision to terminate an employee are inadequate to meet the employer’s obligation to base employment decisions on permissible grounds since an employer must make discharge or hiring decisions based on competent medical evidence available at the time rather than uninformed perceptions. Arline, supra.
15. A decision to discharge that is purportedly based on an employee not being able to perform the function of his or her job due to a handicap must be based on available medical evidence at the time of the decision or liability is established.
16. The issue is whether the employee is presently qualified to perform the essential requirements of the job.
17. If Perkins were in fact not feeling ready to return, the defendant must “reasonably accommodate” his disability with additional time off, unless this time would prove to be an “undue burden” to the employer.
RULINGS ON DEFENDANT’S REQUESTS FOR RULINGS OF LAW
1. Plaintiff has the burden of proof that The Flatley Company discriminated against him. Lewis v. Area II Homecare for Sr. Citizens, 397 Mass. 761, 765 (1986). Wheelock College v. Mass. Com’n Against Discrimin., 371 Mass. 130, 138 (1976). See also Texas Dep't Community Affairs v. Burdine, 450 U.S. 248, 256 (1981).
2. Plaintiff has the burden of establishing a prima facie case of discrimination under the statute. Lewis, supra. Accord, Wheelock College, supra, at 138. Once plaintiff has met his burden of proving a prima facie case of discrimination, The Flatley Company must present evidence of a “lawful explanation” justifying the cessation of plaintiffs employment. Lewis, supra; Wheelock College, supra at 138-39.
3. Once The Flatley Company meets that burden of production, plaintiff must prove that the explanation given by The Flatley Company “is a pretext, that is, lacks reasonable support in evidence, or is wholly disbelievable.” Lewis, supra; Wheelock College, supra at 138-39.
4. In order to establish his prima facie case, plaintiff must prove that:
(1) He was a “handicapped person":
*283 (2) He was a “qualified handicapped person”;
(3) He was terminated “under circumstances which give rise to an inference of unlawful discrimination.”
See Jasany v. United States Postal Service, 755 F.2d 1244-50, n.5 (6th Cir. 1985), quoting Burdine, supra, at 253; Pushkin v. Regents of University of Colorado, 658 F.2d 1372, 1385 (10th Cir. 1981).
5. Plaintiffs failure to sustain his burden of proof as to any of these elements is fatal to his claim. Villecco v. General Electric Company, 8 M.D.L.R. 1010, 1012-13 (1986). See also Connors v. New England Tele. and Tele. Co., 22 Mass.App.Ct. 243, 245-46 (1986).
6. The Flatley Company’s burden of articulating a nondiscriminatory reason for the cessation of the plaintiffs employment requires it to produce credible evidence that the reason advanced for its action was the real reason. Wheelock College, supra, at 138. Accord, Smith College v. Mass. Com’n Against Discrim., 376 Mass. 221, 229 (1978).
7. The Flatley Company’s burden in this regard is only the burden of producing evidence and not the burden of persuading the trier of fact that it was correct in its belief. Lewis, supra, at 766. It can satisfy its burden to produce evidence by showing that its reason for plaintiffs departure from its employment lay in a facially neutral business determination which was not related to any protected classification. Lewis, supra at 766-67. Compare Sarni Original Dry Cleaners v. Cooke, 388 Mass. 611, 615-16 (1982).
8. “. . . [I]f the reason given by the employer is the real reason for its action and is a nondiscriminatory one, even if the [factfinder] thinks the employer’s action was arbitrary or unwise, the employer has fulfilled its obligation of stating a reason and producing support for the stated reason, thus rebutting the prima facie case.” Wheelock College, supra, at 138-39, and at 315. See also Smith College, supra at 228-29 (‘The fact finder has a particularly delicate function. The managerial decision may be unsound or even absurd, but, if the reason given for the decision is the real reason and is non-discriminatory, the [factfinder] has no authority to grant relief from that decision”).
9. Once the employer has “articulated” a lawful reason for its action, plaintiff must establish that this reason was pre textual. He sustains his burden of proof by proving either that The Flatley Company (1) intended to discriminate against him, see, e.g.. Freeman v. World Travelogue Co., 6 M.D.L.R. 1783, 1794-96 (1984), aff'd, 7 M.D.L.R. 1364 (1985); Sarni Original Dry Cleaners, Inc. v. Cook, supra at 616; or (2) enforced an otherwise “neutral” policy which adversely impacted upon “qualified handicapped persons” such as himself, see, e.g., Freeman, supra, at 1799-1801.
10. Although not precisely alleged, plaintiffs claim against The Flatley Company is based upon disparate treatment and not disparate impact. Smith College, supra at 227. Compare Cox v. New England Tel. and Tel. Co., 414 Mass. 375, 385 (1993). As such, proof of discriminatory motive is critical. Smith College, supra
11. Proof of discriminatory motive may be in the form of either direct evidence or circumstantial evidence, Freeman, supra, at 1794-95, or maybe inferred from proof of differences in treatment between “qualified handicapped” and “qualified” nonhandicapped persons. Lewis, supra at 757, and at 872, Smith College, supra, at 228, and at 125, note 9. Proof of discriminatory intent in some form is indispensable.
12. Pursuant to Cox v. New England Tel. and Tel. Co., supra it is appropriate for this Court to review federal cases which have interpreted the analogous federal statute, s. 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 (1988).
13. An otherwise qualified handicapped person is one who is able to meet all the program’s requirements in spite of his handicap. Southeastern Community College v. Davis, 442 U.S. 397, 406 (1979). Conversely, “if the plaintiffs handicap would preclude him from doing the job in question, the plaintiff would not be found to be otherwise qualified.” Pushkin v. Regents of University of Colorado, 658 F.2d 1372, 1387 (10th Cir. 1981).
14. Reasonable accommodation does not require The Flatley Company to change the conditions of employment with respect to a “house person” in order to accommodate plaintiffs inability to interact appropriately with guests and/or to operate equipment safely. Cox v. New England Telephone, supra at 383.
15. Reasonable accommodation in this case did not require the Flatley Company to provide plaintiff with additional time within which to prove that he was capable of performing the essential functions of a “house person.” This would have imposed an undue burden on the employer. Cox v. New England Telephone, supra
16. Plaintiff has failed to sustain his burden of proving that the reasons given by The Flatley Company are pretextual in nature. Although subjective, they are neither suspiciously vague nor a pretext for some illegitimate motive. See Smith College, supra at 231 (1978). There is no direct evidence, circumstantial evidence or inference of unlawful intent which credibly supports the conclusion alleged by plaintiff. Compare Freeman, supra at 1794-96.[3]
ORDER
Judgment shall enter for the defendant.

 Plaintiff presented contrary testimony regarding the events at the March 26, 1990 meeting. Based upon the credibility of the witnesses, I have adopted the defendant’s position.

 M.G.L.c. 151B, §1(20) states: “ ‘major life activities’ means functions, including but not limited to caring for one’s self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working.”

 The remainder of defendant’s requests for rulings are denied except for requests No. 36-45. Requests No. 36-45 concern damages. In view of my decision, 1 take no action on them.