REGINA ALFONSO *vs.* EDWARD LOWNEY.

Bristol. December 4, 1980. — February 12, 1981.

Present: HALE, C.J., CUTTER, & KASS, JJ.

*Governmental Immunity. Municipal Corporations,* Liability for tort,
    Officers and agents. *Negligence,* Public officer. *Practice, Civil,* In-
    structions to jury.

A city's superintendent of parks could not be held personally liable for
    negligence in permitting the existence in the city park of a pen from
    which a wolf bit the plaintiff's finger in 1975 where there was no
    evidence that the superintendent had any direct role in the design,
    construction or maintenance of the wolf pen. [339]
The judge in a negligence action against a city official arising from an in-
    cident which occurred in 1975 erred in refusing, at the conclusion of
    his charge, to amend the charge to include instructions as to the mis-
    feasance-nonfeasance distinction in actions against a public officer on
    the ground that the defendant had not requested such an instruction
    prior to the commencement of the charge. [339-340]

CIVIL ACTION commenced in the Superior Court on Feb-
ruary 11, 1976.

The case was tried before *Mitchell,* J.

*Philip N. Beauregard,* City Solicitor, for the defendant.
*Scott Edward Charnas* for the plaintiff.

KASS, J.  A wolf in the New Bedford Buttonwood Park
Zoo, a city facility, pushed enough of his snout through his
pen to bite the plaintiff's finger.  This action against the su-
perintendent of parks of New Bedford alleged negligence in
permitting the existence of a pen from which a wolf, doing
what carnivores will, could bite someone on the viewing
side of the enclosure.  There was a verdict for the plaintiff.
From the judgment on the verdict, the defendant has ap-
pealed.

1.  The incident occurred in 1975.  Accordingly, this case is governed by *Vaughan* v. *Commonwealth*, 377 Mass. 914 (1979), which held that settled common law principles concerning governmental immunity and exceptions to it would apply to claims against governmental bodies and their employees as to causes of action arising before August 16, 1977.  On and after that date, events giving rise to a tort claim against the Commonwealth and its subdivisions (including municipalities) became controlled as to substance and procedure by G. L. c. 258, as appearing in St. 1978, c. 512, § 15.  As to effective dates, see St. 1978, c. 512, § 16.  See *Lemasurier* v. *Pepperell*, 10 Mass. App. Ct. 96, 98 (1980).

Although *Whitney* v. *Worcester*, 373 Mass. 208 (1977), expressed an intent, if the Legislature did not act, to abandon the misfeasance-nonfeasance distinction in suits against a public officer, the fact of subsequent legislative action gave continued life to the traditional principles regarding the immunity of a public officer which are restated at page 220 of the *Whitney* decision.  Under the old rule, "[P]ublic officers engaged wholly in the performance of public duties are liable only for their own acts of misfeasance in connection with ministerial matters." *Id.* at 220, quoting from *Fulgoni* v. *Johnston*, 302 Mass. 421, 423 (1939).  Nonfeasance, the omission of an act which a person ought to do, creates no liability.  Misfeasance is the improper doing of an act.  *Trum* v. *Paxton*, 329 Mass. 434, 438 (1952).  *Whitney* v. *Worcester*, 373 Mass. at 220.  Compare the provisions which now appear in G. L. c. 258, § 10.

There was no evidence that the defendant had any direct role in the design, construction or maintenance of the wolf pen.  He is not personally liable for mistakes which subordinates might have made.  *Trum* v. *Paxton*, 329 Mass. at 438.  Therefore, the motion for judgment notwithstanding the verdict should have been allowed.  See *O'Shaughnessy* v. *Besse*, 7 Mass. App. Ct. 727, 728 (1979).

2.  Although, on the view we take of the case, we need not reach the point, we note that the judge did not charge

the jury on the misfeasance-nonfeasance distinction. The defendant's counsel called this defect in the charge to the judge's attention after the conclusion of the instructions to the jury.[1] The judge erred in refusing to amend his charge because the defendant had made no request for such an instruction prior to commencement of the charge. Although it is a good practice for a litigant to request certain instructions before the charge, it is not legally necessary to do so. Parties are entitled to an accurate statement of the law for the guidance of the jury. *Hughes* v. *Whiting*, 276 Mass. 76, 79 (1931). Smith & Zobel, Rules Practice § 51.3 (1977). Compare *Narkin* v. *Springfield*, 5 Mass. App. Ct. 489, 491-492 (1977). Parenthetically, we observe that the judge's charge also did not mention contributory negligence, of which the evidence was redolent. We also note that upon concluding his charge the judge left the courtroom without affording counsel a chance to object to the charge. This conduct effectively nullified the right afforded counsel by Mass.R.Civ.P. 51(b), 365 Mass. 816 (1974), to object to instructions before the jury retires. The record reflects that defense counsel instantly took steps (counsel were ushered into the judge's lobby within five minutes of the recess) to see the judge in his lobby for the purpose of making known the defendant's objections.

Judgment is reversed and a new judgment shall be entered for the defendant.

*So ordered.*

---

[1] Hedging his bets on whether *Whitney* announced a change in the law or just an intent to change the law, counsel also asked for — and was denied — an instruction on the ministerial-nonministerial duty distinction. See *Whitney* v. *Worcester*, 373 Mass. at 220-221. Compare G. L. c. 258, § 10.