MARY ELLEN NEAGLE[1] vs. MASSACHUSETTS BAY
TRANSPORTATION AUTHORITY.

No. 96-P-0975.

Norfolk. January 20, 1998. - August 24, 1998.

Present: WARNER, C.J., BROWN, & JACOBS, JJ.

*Practice, Civil,* Judgment notwithstanding verdict. *Negligence,* Design,
Construction work.

In a personal injury action alleging that the defendant Massachusetts Bay
Transportation Authority was negligent in the design or construction of
pedestrian access to a subway station, the trial judge erred in submitting
the plaintiff's claim to the jury, where the record did not demonstrate that
the defendant had participated in the initial design or construction of the
station or had made any changes to the design of the busway or pedestrian
access route since that time. [346-348]
At the trial of a personal injury action, the plaintiff's failure to request that the
issue of premises liability be submitted to the jury by a special verdict
interrogatory constituted a waiver of any right to have that issue submitted
to the jury or to raise the issue on appeal. [348-349]

CIVIL ACTION commenced in the Superior Court Department on
January 28, 1994.

The case was tried before *Thomas E. Connolly,* J., and a mo-
tion for judgment notwithstanding the verdict was heard by
him.

*Jan R. Schlichtmann* for the plaintiff.

*Julie Reardon* (*Jonathan P. Feltner* with her) for the
defendant.

WARNER, C.J. The defendant, Massachusetts Bay Transporta-
tion Authority (MBTA), appeals from a Superior Court jury
verdict in favor of the plaintiff, Mary Ellen Neagle. Neagle is

[1]As guardian of Hilda Galvin.

the daughter of Hilda Galvin, an elderly woman[2] who was severely injured when she was struck by an MBTA bus at Quincy Center station on the afternoon of November 18, 1993. The accident occurred when Mrs. Galvin attempted to cross the busway, a section of roadway used by buses pulling into the station, located between a drop-off island in the parking lot and the platform where passengers board and disembark from buses.

At the close of the plaintiff's case, the MBTA filed a motion for a directed verdict, which was denied. The motion was renewed and again denied at the close of the evidence. In response to special questions, the jury found that the MBTA bus driver was negligent, but that her negligence was not a substantial contributing cause of Mrs. Galvin's injuries. The jury also found that the MBTA was negligent in the design or construction of pedestrian access to the station, and that its negligence was a substantial contributing cause of Mrs. Galvin's injuries. They awarded the plaintiff $950,000.[3] The MBTA subsequently filed a motion for judgment notwithstanding the verdict, which was denied.

The MBTA raises several issues on appeal. Because there is no evidence that the MBTA actually designed or constructed the station, we conclude that the judge erred in submitting the negligent design and construction claim to the jury.[4] Accordingly, we reverse.

The MBTA maintains that it cannot be liable for the allegedly negligent design or construction of pedestrian access to Quincy station because there was no evidence adduced at trial that it participated in such design or construction, either in 1970, when the station was built, or in 1991, when additional work was performed to bring the station into compliance with the Americans with Disabilities Act. See 42 U.S.C. §§ 12101-12213 (1990). It argues, therefore, that the judge erred in submitting the plaintiff's negligent design and construction claim to the jury.[5] On appeal, we must determine whether, "upon any reasonable view of the evidence, there [can be]

[2]Hilda Galvin never recovered sufficiently to manage her own affairs and her daughter was subsequently appointed her guardian.

[3]Because the jury also found that Mrs. Galvin was thirty-five percent comparatively negligent, the award was reduced accordingly.

[4]We therefore need not consider the remaining issues raised by the MBTA.

[5]During oral argument, counsel for the plaintiff conceded that the issue was "vehemently contested."

found a combination of facts from which a rational inference may be drawn in favor of the plaintiff[] . . . ." *Chase* v. *Roy*, 363 Mass. 402, 404 (1973).

It is undisputed that the MBTA did not participate in the initial design or construction of Quincy Center station. In 1991, however, additional work was undertaken to bring the station into compliance with the Americans with Disabilities Act.[6] The plaintiff argues that the MBTA was actively involved in designing the 1991 modifications, and claims, therefore, that its failure to make simple improvements for pedestrian safety at that time, such as adding concrete barriers, painting an additional crosswalk,[7] or erecting signs that might have abated the obvious hazard to pedestrians, renders it liable. She also contends that regardless of whether the MBTA actively participated in the design of the station, the verdict should be upheld because, as the station's owner, the MBTA was responsible for maintaining the premises in a reasonably safe condition.

The record before us is devoid of evidence that the MBTA participated in the design or construction of the 1991 improvements to the station. Moreover, nothing in the record indicates that any of the changes made at that time altered or affected the existing design of the busway or the pedestrian access routes to Quincy station. To the contrary, Lawrence Parretti, Jr., superintendent of civil and design engineering with the MBTA's engineering and maintenance department, testified that the 1991 improvements consisted of making accessible paths of travel, including curb cuts, through the station for handicapped persons, and that the changes in no way altered the design or construction of the busway or the station's pedestrian access routes. Indeed, on cross-examination, Parretti conceded that since 1973, there had been no changes in the design or construction of the busway or the pedestrian access routes to the station.[8] Because the defendant did not participate in the initial design or construction of Quincy station and has made no

[6]The work was completed in 1993.

[7]Mrs. Galvin was crossing the busway outside an existing crosswalk when she was struck by the bus.

[8]The following exchange occurred during Parretti's cross-examination by counsel for the MBTA:

> *Q.* "And is it a fact . . . that what was done at the time that you were supervisor of construction was to bring the station into conformity with the American[s with] Disabilities Act?"

changes to the design of the busway or the pedestrian access route since that time, it cannot be liable for any deficiency in the station's design or construction. See *O'Shaughnessy* v. *Besse*, 7 Mass. App. Ct. 727, 728-729 (1979) (motion for directed verdict or judgment notwithstanding the verdict should be granted if "the evidence is such that . . . there can be but one conclusion as to the verdict that reasonable men could have reached" [citation omitted]). Cf. *Alfonso* v. *Lowney*, 11 Mass. App. Ct. 338, 339 (1981) (no personal liability in the absence of any evidence that defendant had a direct role in the design, construction, or maintenance of an allegedly defective animal cage); *Lemovitz* v. *Pine Ridge Realty Corp.*, 887 F. Supp. 16, 18 (D. Me. 1995) (no liability for negligent design against owners of golf course who had not designed course or made changes in its design).

The plaintiff's argument that the verdict should be affirmed, based upon the MBTA's liability on a theory of premises liability, must also fail. Notwithstanding any ongoing duty the MBTA may have owed Mrs. Galvin, the jury was never asked to consider the issue. Rather, two theories of liability were submitted to the jury through the use of special verdict interrogatories pursuant to Mass.R.Civ.P. 49(a), 365 Mass. 812-813 (1974): whether the MBTA was negligent in the operation of the bus involved in the incident, and whether it was negligent in the design or construction of pedestrian access to Quincy Center station. Neither question made mention of the MBTA's alleged failure to maintain the premises in a reasonably safe condition. Moreover, counsel for the plaintiff did not request a special verdict interrogatory based upon the theory of premises liability, nor object to the special questions that were submitted to the jury. Pursuant to Mass.R.Civ.P. 49(a), this failure resulted in a waiver of the plaintiff's rights to have the issue of premises liability submitted to the jury and to raise the issue on appeal.

---

*A.*    "Yes."

. . .

*Q.*    "So is it safe to say that since 1973 in accordance [with] your examination of the records, there have been no changes in the design or construction of the busway or the pedestrian access route to Quincy Station?"

*A.*    "That's correct."

See *Hawco* v. *Massachusetts Bay Transp. Authy.*, 398 Mass. 1006, 1006 (1986) ("failure to ask that an issue be submitted to the jury by a special verdict interrogatory is a waiver of jury trial on the issue or issues omitted"). See also *Herson* v. *New Boston Garden Corp.*, 40 Mass. App. Ct. 779, 788 (1996). The judgment in favor of the plaintiff is vacated, and judgment is to be entered for the MBTA.

*So ordered.*