TRUSTEES OF FORBES LIBRARY *vs.* LABOR RELATIONS
COMMISSION & another.

Hampshire.    September 16, 1981. — November 12, 1981.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & LYNCH, JJ.

*Labor*, Unfair labor practice, Discharge for union activity. *Labor Relations Commission*, Burden of proof.

Discussion of the standard to be applied in evaluating motivation when an employer accused of unlawfully discharging an employee for union activity claims to have had independent, lawful reasons for the discharge and of the burden of proof in such cases. [561-568]

In an unfair labor practice case the evidence warranted findings by the Labor Relations Commission that an employee was discharged because of his union activities and that the lawful reasons for the discharge given by the employer had no influence in the decision. [568-569]

Where it was apparent that a board of trustees relied on the recommendations of supervisors in discharging an employee rather than making an independent decision, the Labor Relations Commission was warranted in focusing on the motives of the supervisors to determine whether the employee had been unlawfully discharged for his union activities. [569-570]

CIVIL ACTION commenced in the Superior Court Department on July 20, 1979.

The case was heard by *Hayer*, *Cross*, and *Griffin*, JJ.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Edward D. Etheredge* for the plaintiff.

*Jean Strauten Driscoll* for the defendants.

HENNESSEY, C.J.   This is an appeal from a Superior Court judgment affirming a Labor Relations Commission (commission) decision that held that Forbes Library violated the labor laws, G. L. c. 150A, §§ 3, 4 (1), 4 (3), when it dis-

charged Richard Steward, a media technician.[1] We conclude that the result reached by the commission was justified under any of the legal standards proposed by the parties, and was supported by substantial evidence. Therefore, we affirm the judgment of the Superior Court.

Richard Steward began work for the library in 1976. His supervisors were Glenda Henerey Donovan, head of the media department, and Stanley Greenberg, library director. The final decision to fire Steward was made by the library's three-member board of trustees, acting on the recommendations of the supervisors Donovan and Greenberg.

Problems between Steward and his supervisors began in the summer of 1977. Steward began to complain about wages and work assignments, and met with other employees to discuss his complaints and solicit interest in unionization. He also retained an attorney to determine whether library workers were public employees. These activities were the subjects of a number of disputes between Steward and his supervisors.

In March, 1978, Steward arranged a meeting with one of the trustees, Katherine Finn, to present his complaints and proposals. This angered Greenberg, and relations deteriorated rapidly. Greenberg solicited letters of complaint about Steward from other employees, and he and Donovan met several times with the trustees to express their displeasure with Steward.

In May, the trustees held a meeting at which both sides aired their views. Donovan charged Steward with "subversive activities" and an inability to "accept authority." Under these headings she listed several infractions of library rules,

---

[1] General Laws c. 150A, § 3, outlines basic employee rights to self-organization, collective bargaining, and concerted activity for mutual aid and protection. Section 4 defines unfair labor practices by an employer. These include interference with the exercise of rights protected by § 3, and hiring and tenure practices that discriminate against or in favor of union membership. Section 6 empowers the Labor Relations Commission to conduct unfair practice hearings and to grant appropriate relief.

as well as Steward's attempts to organize library employees and his objections to pay and terms of employment. Steward responded with explanations and denials. Several other employees spoke on each side, and a number of library patrons wrote in support of Steward. After the meeting, Greenberg sent the trustees a summary of Donovan's charges, in which he recommended that Steward be fired.

In early June, the trustees voted two to one to discharge Steward. Steward subsequently filed a charge with the commission. The commission issued an unfair labor practice complaint, conducted a hearing, and concluded that the trustees had violated the labor laws. It ordered the trustees to reinstate Steward with back pay. A three-judge panel of the Superior Court affirmed, and the trustees have appealed. We transferred the case to this court on our own motion.

1. *Standard of evaluation and burden of proof.* The trustees first argue that the commission should have applied a "dual motive" standard in its evaluation of their decision. The commission dismissed the reasons offered by the trustees to explain their action as mere pretexts, and concluded that Steward had been discharged *solely* because he had engaged in activities protected by the labor laws. See G. L. c. 150A, §§ 3, 4 (1), 4 (3). The trustees point out that there was evidence of mixed motives — some lawful and some unlawful. They argue that the commission, in its single-motive analysis, gave inadequate consideration to the trustees' asserted lawful motives.

We believe that the commission's findings justify its decision under any of the standards argued by the parties; therefore, we need not choose among standards in order to resolve this case. We think it appropriate, however, to outline a standard and an accompanying burden of proof, so that the commission will have clear guidelines for its future decisions. We conclude that the commission should not reinstate an employee unless it finds that the employee would not have been discharged but for his protected activity. The burden of proof under this standard should follow

the pattern established in our sex discrimination cases; the employee must bear the ultimate burden of persuasion, but may rely on a prima facie showing to shift to the employer a limited burden of producing evidence. *School Comm. of Braintree* v. *Massachusetts Comm'n Against Discrimination*, 377 Mass. 424 (1979). *Smith College* v. *Massachusetts Comm'n Against Discrimination*, 376 Mass. 221 (1978). *Wheelock College* v. *Massachusetts Comm'n Against Discrimination*, 371 Mass. 130 (1976).

Courts in other jurisdictions have developed at least two standards for evaluating motivation when an employer accused of unlawful discharge claims to have had independent, lawful reasons to fire its employees. The first standard to appear was the "in part" test, which holds that the employer has violated the labor laws if it was motivated "even in part" by unlawful sentiments. See, e.g., *NLRB* v. *Gogin*, 575 F.2d 596, 601 (7th Cir. 1978); *M.S.P. Indus., Inc.* v. *NLRB*, 568 F.2d 166, 173-174 (10th Cir. 1977); *NLRB* v. *Jamestown Sterling Corp.*, 211 F.2d 725, 726 (2d Cir. 1954).[2] If a court applying this test discerns an unlawful motive, it will not even consider whether the employer might have had another, lawful cause for discharge.

A second standard used to resolve dual motive cases is the "dominant motive," or "but for" test. If the employer would not have discharged the employee but for the employee's protected activities, the discharge is unlawful and the employee must be reinstated. If, however, a lawful cause would have led the employer to the same conclusion even in the absence of protected conduct, the discharge must not be disturbed. E.g., *NLRB* v. *Eastern Smelting & Ref. Corp.*, 598 F.2d 666, 670-671 (1st Cir. 1979); *Midwest Regional Joint Bd., Amalgamated Clothing Workers* v. *NLRB*, 564 F.2d 434, 440 (D.C. Cir. 1977); *Firestone Tire & Rubber Co.* v. *NLRB*, 539 F.2d 1335, 1337

[2] The cases cited were decided under the National Labor Relations Act, 29 U.S.C. §§ 151-169 (1976 & Supp. III 1979), which is analogous to our own labor laws in all material respects.

(4th Cir. 1976); *Mead & Mount Constr. Co.* v. *NLRB,* 411 F.2d 1154, 1157 (8th Cir. 1969).[3]

We prefer the "but for" standard. As the Supreme Court pointed out in an unlawful discharge case arising under the First Amendment, an "in part" test of motive is often overprotective. *Mt. Healthy City School Dist. Bd. of Educ.* v. *Doyle,* 429 U.S. 274, 285-286 (1977). See also *Givhan* v. *Western Line Consol. School Dist.,* 439 U.S. 410, 416-417 (1979). If unlawful sentiments contribute in any material way to an employer's desire to fire an employee, the "in part" test shields the employee from discharge despite unsatisfactory work or flagrant misbehavior. This result may cut too far into the employer's legitimate business interests. *Id.* Further, the "in part" test of motive favors employees who engage in protected activity over those who do not. *Id.* A "but for" test strikes a more equitable balance among the interests at stake; the employer is not forced to accept an unsatisfactory employee, and a union organizer is subject to discipline to the same extent as other employees.

Having stated our preference for the "but for" standard, we now turn to the question of burden of proof. A "but for" standard calls for special attention to the burden of proof of unlawful motivation. Motivation is a subjective issue, seldom susceptible to direct proof. Moreover, a "but for" standard amplifies difficulties of proof, because the parties must address lawful as well as unlawful motives.

Courts that apply a "but for" test have varied in their allocations of the burden of proof. Some hold that the employee, or the labor commission as charging party, bears the entire burden of proof. The charging party must prove

---

[3] The United States Court of Appeals for the First Circuit has also expressed its standard as requiring the National Labor Relations Board to show "why the employer rejected the good cause and chose a bad one." *NLRB* v. *Billen Shoe Co.,* 397 F.2d 801, 803 (1st Cir. 1968). At least one court has blended the "in part" and "but for" tests. E.g., *Edgewood Nursing Center, Inc.* v. *NLRB,* 581 F.2d 363, 368 (3d Cir. 1978). The Fifth Circuit permits reinstatement if the good and bad motives were of roughly equal force. *NLRB* v. *Aero Corp.,* 581 F.2d 511, 514-515 (5th Cir. 1978).

both that the employer harbored an unlawful motive, and that but for that motive, the employee would not have been discharged. E.g., *Mead & Mount Constr. Co.* v. *NLRB,* 411 F.2d 1154, 1157 (8th Cir. 1969); *NLRB* v. *Billen Shoe Co.,* 397 F.2d 801, 803 (1st Cir. 1968). This is a heavy burden for the charging party, who must address the opponent's frame of mind, and prove the broad negative proposition that no lawful reason motivated the discharge decision.

The employee's problems of proof could be alleviated by a rule placing the burden of persuasion on the employer; once the employee had established that the employer had an improper motive and that this motive contributed at least in part to the discharge, the burden would shift to the employer. To escape liability, the employer would then have to prove by a preponderance of evidence that other, lawful considerations would have led it to fire the employee in any event. See *NLRB* v. *Eastern Smelting & Ref. Corp.,* 598 F.2d 666, 671 (1st Cir. 1979); *Statler Indus., Inc.* v. *NLRB,* 644 F.2d 902, 905 (1st Cir. 1981). But see *Wyman-Gordon Co.* v. *NLRB,* 654 F.2d 134, 141-142 (1st Cir. 1981); *NLRB* v. *Amber Delivery Serv., Inc.,* 651 F.2d 57, 68-69 (1st Cir. 1981). We have adopted an analogous rule in cases involving a bailee's liability for lost or damaged goods. When goods are damaged in the hands of a bailee, the bailee often knows what happened and what care was taken to prevent accident. Because the bailor is not likely to have this information, we have relieved the bailor of its traditional burden of proving the bailee's negligence, and held instead that the bailee must prove that it exercised due care. *Knowles* v. *Gilchrist Co.,* 362 Mass. 642, 651-652 (1972).

When an employer is charged with retaliation against union activity, however, such a complete shift may not be appropriate. The labor laws do not require an employer to have "just cause" to fire an employee. See *NLRB* v. *Eastern Smelting & Ref. Corp.,* 598 F.2d 666, 669 (1st Cir. 1979). They merely define reasons that cannot influence a discharge decision. The commission must discern and neutral-

ize unlawful motives, but must not displace permissible business judgments. A rule that requires the employer to persuade the trier that lawful reasons motivated its decision invites the trier to examine the wisdom of the reasons. As a result, the trier may overturn legitimate business decisions that the labor laws were not intended to disturb.

Our cases in the area of sex discrimination suggest a third, intermediate method of allocating the burden of proof under a "but for" standard. See *School Comm. of Braintree* v. *Massachusetts Comm'n Against Discrimination*, 377 Mass. 424, 429-430 (1979); *Smith College* v. *Massachusetts Comm'n Against Discrimination*, 376 Mass. 221 (1978); *Wheelock College* v. *Massachusetts Comm'n Against Discrimination*, 371 Mass. 130 (1976). The employee in a sex discrimination case bears the over-all burden of persuading the trier of fact that her employer would not have discharged her but for a discriminatory animus. *Smith College, supra* at 227 n.8. She may, however, rely in the first instance on a "prima facie" showing of discrimination.[4]

---

[4] If the commission relies on an unrebutted prima facie case in reaching its decision, it must spell out the elements of a prima facie case. *Massachusetts Bd. of Regional Community Colleges* v. *Labor Relations Comm'n*, 377 Mass. 847, 852 (1979). *Smith College* v. *Massachusetts Comm'n Against Discrimination*, 376 Mass. 221, 230 (1978). See *School Comm. of Braintree* v. *Massachusetts Comm'n Against Discrimination*, 377 Mass. 424, 428-429 (1979). The elements may vary with the nature of the claim and the circumstances. *Smith College, supra.* In *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792 (1973), the Supreme Court described a prima facie case of race discrimination under the Federal civil rights statutes. The Court stated that a plaintiff in such an action was required to show that he belonged to a racial minority, that he had applied for and was qualified for an existing position, that he had been rejected, and that the position had remained open after his rejection. *Id.* at 802. Proof of the circumstances listed by the Court would show that race discrimination was a likely influence in the employer's decision. The Court's prima facie case does not, however, extend to subjective matters such as unusual considerations that may have led the employer to reject a job application. Each element involves the actions and qualifications of the plaintiff — matters within the plaintiff's knowledge, or at least within his reach. An analogous prima facie showing in an unfair labor practice case might include proof that an employee had a generally good work record, that he had engaged in protected activity, and that this activity was plainly visible to the employer.

Proof of a prima facie case shifts to the employer the responsibility to come forward with evidence; the employer must state a lawful reason for its decision and produce supporting facts indicating that this reason was actually a motive in the decision. *School Comm. of Braintree, supra* at 430. *Smith College, supra* at 229. *Wheelock College, supra* at 136, 138. For example, an employer might assert that it had fired an employee because it believed the employee had broken rules. The employer would then have to identify the rules and perhaps the occasions of their violation, and offer some indication that it had considered these violations in its deliberations prior to the discharge.

This procedure lightens the employee's burden; the employer's evidence provides information and narrows the field of possible lawful reasons that the employee must address. It does not, however, go as far to relieve the employee's burden as does the rule we have applied in bailee cases, which shifts the burden of persuasion to the party closest to the facts. The employer's burden following a prima facie showing of sex discrimination is only a responsibility to produce evidence. Once the employer has proposed a reason and presented supporting facts, the presumption of discrimination is dispelled. See McCormick, Evidence §§ 336, 345 (2d ed. 1972). The employer need not *persuade* the trier that it was correct in its belief that the employee had broken rules, nor that the rules infractions would have caused it to discharge an employee of any sex. The burden of persuasion remains with the employee, who must prove by a preponderance of evidence that the asserted lawful reason was not the real reason for the discharge. *School Comm. of Braintree, supra* at 429. *Smith College, supra* at 230. *Wheelock College, supra* at 136-139. Thus, if the evidence is in balance, the employer must prevail.[5]

_____

[5] To ensure that the commission against discrimination did not displace an employer's legitimate business judgment, we stated in *Smith College, supra* at 230, 231-232, that an employee faced with an employer's evidence of a lawful reason bears a burden of persuasion on two distinct points. We said that the employee must show that the reason was not supported by the facts, and that it was not an actual, independent force in the decision. In the *Smith College* case, the employer claimed that the

The pattern we have followed for allocating responsibilities of proof in sex discrimination disputes is well tailored to the special difficulties present in an unfair labor practice case. Discriminatory discharge cases and the present problem of discharge in violation of the labor laws have in common the special need to preserve employer discretion in matters outside the province of the commission against discrimination and the labor commission. In *Smith College, supra* at 232, we emphasized the need for solid proof that an asserted lawful reason was not a real motive in the decision, to ensure that the commission did not reject a lawful reason simply because it was not a wise or fair cause for discharge. Further, as to the analogy to our bailee cases, the problem of access to evidence is not as striking in cases of unlawful discharge as in cases of bailee negligence. An employee may be excluded from the employer's decisional process, but, unlike a bailor, he has participated in some of the relevant events. He is familiar with his protected activities and with his work record. We believe, therefore, that the rules governing the burden of proof in sex discrimination cases should apply in unfair labor practice cases as well. We note that the First Circuit recently reached a similar conclusion in unfair discharge cases under the Federal labor laws. See *Wyman-Gordon Co.* v. *NLRB*, 654 F.2d 134, 141-142 (1st Cir. 1981); *NLRB* v. *Amber Delivery Serv., Inc.* 651 F.2d 57, 68-69 (1st Cir. 1981).

---

employees were not qualified for tenure. We required the employees first to prove their qualifications, and then to show that the employer did not act on a belief that the employees were unqualified. *Id.* at 231-232. We did not, however, intend to suggest that an employee who successfully proves that the lawful reason was not a motive in the decision, must nevertheless lose if she fails to prove that the reason was inaccurately applied to her. If, for example, an employer asserted that it had fired an employee for breaking rules, but the employee proved that this reason did not cause the discharge, the employee would prevail even if she had in fact broken the rules. The employer should not be permitted to escape liability by invoking after the fact some defect in the employee's performance. Our statements in *Smith College* meant only that proof that a reason was inaccurate is not enough if the reason was actually instrumental in the decision.

In the present case, we need not apply the special procedure we have outlined for allocating burdens of production and persuasion. The commission placed the entire burden of proof on the employee, and made findings that satisfy a "but for" test of motivation. See *Massachusetts Bd. of Regional Community Colleges* v. *Labor Relations Comm'n*, 377 Mass. 847, 851-852 (1979). It found that unlawful motives were at play in Steward's discharge, and that the lawful reasons advanced by the trustees had no influence in the decision. If the lawful reasons had no influence, it follows that the trustees would not have reached their decision but for Steward's protected activity.[6] See *id*. at 851. Therefore, if the commission's conclusions were supported by the evidence, Steward must prevail under any of the "dual motive" standards described above.

2. *Review of the evidence.* We come now to the trustees' second argument — that the commission's decision was contrary to the evidence. Although this court is free to examine the legal standards employed by the commission, our power to review the commission's findings of fact is circumscribed by the standards set out in the State Administrative Procedure Act. See G. L. c. 150A, § 6 (*e*), (*f*) (incorporating G. L. c. 30A, § 14 [7]). Unless the commission's findings are "[u]nsupported by substantial evidence," we must affirm. G. L. c. 30A, § 14 (7) (*e*), as amended through St. 1973, c. 1114, § 3. "Substantial evidence" is evidence that "a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1 (6), inserted by St. 1954, c. 681, § 1. *Labor Relations Comm'n* v. *University Hosp., Inc.*, 359 Mass. 516, 521 (1971). We believe that the commission's decision meets this test.

---

[6] We do not endorse the commission's conclusion that this was not a "dual motive" case. This case, like most cases in which an employee believes that his employer has discharged him for an unlawful reason, involves several possible motives. The employer has advanced legitimate reasons for the decision, and these reasons are entitled to consideration under a "dual motive" standard. However, the commission's mistaken characterization of the case is not fatal to its decision, because its evaluation of the employer's asserted reasons was equivalent to a dual motive analysis.

The trustees do not question that Steward regularly engaged in protected activities, nor that these activities were known to his supervisors and to the trustees. See, e.g., *NLRB* v. *Eastern Smelting & Ref. Corp.*, 598 F.2d 666, 670 (1st Cir. 1979). Steward complained to his supervisors, Donovan and Greenberg, about pay and working conditions at the library. He met with fellow employees to discuss common concerns. He retained an attorney to determine the library workers' status as public employees. Finally, he brought his objections directly to the trustees' attention in a meeting with trustee Finn.

There is ample evidence that Donovan and Greenberg were displeased with these activities, and that their displeasure motivated them to recommend that Steward be discharged. On several occasions, the supervisors directly expressed their hostility to Steward's protected activities. Greenberg, in his letter recommending discharge, spoke of "actions more suitable to coal mines and factories." Donovan, in her statement to the trustees, included Steward's complaints about pay, his communications with other employees, and his investigation into public employee status under the heading "subversive activities." The commission also points to various circumstantial evidence of unlawful motivation; for example, Donovan and Greenberg became abruptly more hostile after Steward met with trustee Finn to discuss pay, benefits, and improvements. Cf. *NLRB* v. *South Shore Hosp.*, 571 F.2d 677, 683 (1st Cir. 1978); *St. Elizabeth's Hosp.* v. *Labor Relations Comm'n*, 2 Mass. App. Ct. 782, 784 (1975).

This evidence, of course, concerns the sentiments of the supervisors rather than those of the trustees, who made the final decision. When persons responsible for discharging an employee have independent reasons for their decision, apart from the recommendations of lower level supervisors, the commission must give those reasons due consideration as motives for the discharge. If however, the decision makers relied on the recommendations of supervisors, the motives of the supervisors should be treated as the motives for the deci-

sion. Cf. *St. Elizabeth's Hosp.* v. *Labor Relations Comm'n,*
2 Mass. App. Ct. 782, 783-784 (1975). An employer should
not be permitted to insulate its decision by interposing an in-
termediate level of persons in the hierarchy of decision, and
asserting that the ultimate decision makers acted only on
recommendation, without personal hostility toward pro-
tected activity. In the present case, the commission found
that the two trustees who voted to discharge Steward "relied
heavily" on Donovan and Greenberg. Trustee Moriarty ad-
mitted that his vote depended entirely on the supervisors' ad-
vice. Trustee Hubley's testimony was not as clear, but did
indicate substantial reliance on Greenberg and Donovan.
Further, any independent evaluation she may have made
centered on the conflict between Steward and his super-
visors, which itself arose out of Steward's protected activity.
See *NLRB* v. *South Shore Hosp., supra.* The commission
could reasonably infer from the trustees' statements that their
decision was not an independent one — that they would not
have reached it but for the supervisors' unlawful sentiments.
Therefore, the commission properly focused its attention on
the supervisors.

The commission also addressed the crucial question under
a "but for" standard — whether the lawful reasons asserted
by the library actually served as independent motives in the
decision. In a letter to Steward, the trustees stated three
reasons for discharging him — failure to obey the super-
visor, Donovan; failure to obey the department head,
Greenberg; and failure to conform to library rules. They
named no specific violations of rules, and the commission
found that various violations cited by Donovan and Green-
berg were trivial, false, or long-condoned. Donovan
complained of attendance problems, but Greenberg had
checked Steward's time cards and found no irregular ab-
sences. Steward explained that equipment failure had
caused him to close late several times after films. Steward
also presented evidence that Greenberg had approved certain
changes that he had made in the media department without
Donovan's permission. Further, although the infractions

occurred early in Steward's employment, neither Donovan nor Greenberg took any action on them until after Steward had spoken up on terms of employment and brought his views to the attention of trustee Finn. Although the question is a close one, there was enough evidence in Steward's favor to support the commission's conclusion that these matters alone would not have led to discharge.

The other reasons for the discharge, proposed by Donovan and Greenberg and adopted by the trustees, centered on the tension between Steward and his supervisors. Steward gave convincing evidence that these "authority" problems were triggered by his protected activities. The hostilities began when Steward began to speak to the supervisors and to fellow employees about pay, work conditions, and public employee status, and increased as Steward's activities increased. Further, both Donovan's and Greenberg's written charges concerning Steward's response to authority referred expressly to protected activities. Therefore, the commission could reasonably conclude that the "authority" reasons were indistinguishable from the supervisors' retaliatory sentiments. An employee's refusal to accept authority cannot be considered a lawful, independent reason for discharge when the authority in question was used to suppress protected activity. See *NLRB* v. *South Shore Hosp.*, 571 F.2d 677, 683 (1st Cir. 1978).

In sum, we hold that employer motivation should be judged by a "but for" standard, and that the burden of proof should be allocated according to the procedure described in our sex discrimination cases. Further, we believe that the evidence supported the commission's findings that unlawful considerations motivated the trustees' decision to fire Steward, and that lawful considerations did not. It follows that the commission's decision was justified under any of the "dual motive" standards it might have applied, including the standard that we have approved. Therefore, we affirm the judgment of the Superior Court.

*So ordered.*