The defendant, Woronoco Realty, LLC (Realty), appeals from an amended judgment awarding the plaintiff, Woronoco Hydro, LLC (Hydro), double damages, costs, and attorney's fees pursuant to G.L.c. 93A after a jury found in favor of Hydro on its breach of contract claim against Realty and against Realty on Realty's counterclaim for unjust enrichment. Realty raises several issues, specifically, that the judge (1) erred in denying its motion for directed verdict where Hydro failed to introduce expert evidence on damages and had committed a material breach of the contract that relieved Realty of its contractual duties; (2) erred in denying its motion for judgment notwithstanding the verdict and its motion for new trial on its counterclaim for unjust enrichment; (3) gave erroneous instruction to the jury that improperly shifted the burden of proof onto Realty, and (4) erred in imposing double damages on a mere breach of contract. We affirm.
Background. Hydro and Realty each acquired property in what had once been a manufacturing complex owned by a single company. When Hydro purchased its property in 2001, it entered into a "Cross-Easements, Covenants, and Restrictions Agreement" (the agreement) allowing it to send hydroelectricity that it produced through a mill, later purchased by Realty, to an interconnection with Western Massachusetts Electric Company (WMECO). According to the agreement, any electricity that the mill used before the electricity was transferred to WMECO would be billed to the owner of the mill on a monthly basis. Hydro charged Realty the same price per kilowatt that WMECO would have charged, without any additional costs. The agreement also required Hydro to remove the electrical distribution facilities from Realty's acquired mill and build a new interconnection directly with WMECO, no later than the fifteen-month anniversary date of the agreement (i.e., September 6, 2002). However, Hydro continued to send electricity through the mill and send Realty invoices on a monthly basis until July, 2006.
At some point in time, a dispute arose and Realty stopped paying Hydro for the electricity. By the time Hydro disconnected the electric supply to the mill in July, 2006, Realty had accrued over $73,000 in unpaid electric bills. Hydro filed suit, seeking damages under a breach of contract theory and for violations of G.L.c. 93A. Realty filed a counterclaim for unjust enrichment, alleging that Hydro had overcharged Realty for electricity and benefited from continuing to supply power through the mill after September 6, 2002. After trial, the jury found in favor of Hydro on its breach of contract claim and on Realty's unjust enrichment claim. The judge found that Realty intentionally induced Hydro to continue providing power, and ordered the entry of an amended judgment granting Hydro double damages under c. 93A.
1. Motion for directed verdict and judgment notwithstanding verdict. Realty asserts that the judge erred in denying its motion for a directed verdict and motion for judgment notwithstanding the verdict. A motion for a directed verdict and a motion for judgment notwithstanding the verdict are reviewed using the same standard. Scott v. Boston Hous. Authy., 56 Mass. App. Ct. 287, 294 (2002). "The question is whether the evidence, construed most favorably to the plaintiff, could not support a verdict for the plaintiff." Poirier v. Plymouth, 374 Mass. 206, 212 (1978).
Relying on Esturban v. Massachusetts Bay Transp. Authy., 68 Mass. App. Ct. 911 (2007), Realty contends that, having failed to produce expert testimony concerning the cost of the electricity it supplied, Hydro failed to meet its burden of proof on the issue of damages. However, Realty's reliance on Esturban is misplaced. In Esturban, the absence of expert testimony forced the jury to speculate as to whether the design of an elevator was dangerous and whether it complied with the relevant industry standards because there was no other evidence that supplied that information. Id. at 911-912. Here, however, the jury were not forced "to resort to impermissible 'conjecture and surmise,' " id. at 911, quoting from Triangle Dress, Inc. v. Bay State Serv., Inc., 356 Mass. 440, 441-442 (1969), because there was other testimony from which they could derive the cost of the electricity. The jury heard the testimony of Hydro's owner and Hydro's station manager, who both explained how the electric bills were calculated. This evidence was sufficient.
Next, Realty contends that it was entitled to judgment notwithstanding the verdict because Hydro materially breached the agreement when it failed to remove the interconnection by September 6, 2002, as agreed to and, thereby, relieved Realty from further performance under the contract. We disagree. "Whether a breach is material or immaterial normally is a question for the jury to decide." Lease-It, Inc. v. Massachusetts Port Authy., 33 Mass. App. Ct. 391, 396 (1992). "A material breach of an agreement occurs when there is a breach of 'an essential and inducing feature of the contract[ ].' " Ibid., quoting from Bucholz v. Green Bros. Co., 272 Mass. 49, 52 (1930). Realty presented no evidence that it relied on Hydro to disconnect the power supply by September, 2002, and Realty did not act on the agreement's self-help clause and disconnect the power supply on its own. Rather, Realty continued to accept power without protest. Based on this evidence, the jury could have found that the removal of the interconnection was not an essential and inducing feature of the agreement and, thus, that Realty was not excused from continuing to pay for electricity after September, 2002.
2. Motion for a new trial. Realty also asserts that the jury's verdict rejecting its unjust enrichment counterclaim was against the weight of the evidence and, therefore, the judge should have granted its motion for a new trial. A judge's discretion to grant a motion for a new trial should be exercised "only when the verdict 'is so greatly against the weight of the evidence as to induce ... the strong belief that it was not due to a careful consideration of the evidence, but that it was the product of bias, misapprehension or prejudice.' " Turnpike Motors, Inc. v. Newbury Group, Inc., 413 Mass. 119, 127 (1992), quoting from Scannell v. Boston Elev. Ry., 208 Mass. 513, 514 (1911). Here, there was evidence that, while Hydro channeled the power supply through Realty's mill, Realty received the benefit of electricity from Hydro at a reduced rate. Realty also asserts that Hydro was enriched because of discrepancies with its billing, which it claims was acknowledged by Hydro's representative. However, the jury also heard conflicting testimony from Hydro's owner and station manager regarding Hydro's billing practices. The jury were free to credit this testimony, and the judge did not abuse his discretion in denying the motion for a new trial.
3. Jury charge. Realty contends that the judge's instructions to the jury erroneously relieved Hydro of its burden of proving that it did in fact deliver electricity to Realty and suggested that the judge supported Hydro's theory of the case. Specifically, Realty takes issue with the judge's statement, "I have already instructed you that there was a contract here, there was electrical power provided, there was consideration, in other words, money paid for that power."
A trial judge has "wide discretion" in choosing the language of jury instructions, and on review, this court considers only whether "a critical issue ... was dealt with erroneously as a matter of law." General Dynamics Corp. v. Federal Pac. Elec. Co., 20 Mass App. Ct. 677, 684 (1985) (quotation omitted). Judges "shall not charge juries with respect to matters of fact, but they may state the testimony and the law." G.L.c. 231, § 81. In this case, the parties agreed that the formation of the contract was not a question before the jury,[2] and the judge merely explained what the terms of that contract were. The judge's instructions did not intrude on the jury's role as fact finder in determining whether Realty had breached the contract or whether Hydro had been unjustly enriched. Cf. Pfeiffer v. Salas, 360 Mass. 93, 99 (1971) (holding that judge's instructions erroneously recalled key portions of testimony which "resulted in the denial of a fair trial to a litigant"). We see no error.
4. General Laws c. 93A. Realty raises a number of issues related to Hydro's c. 93A claim, including that it was barred by the statute of limitations, that its conduct does not support c. 93A liability, that there was no causal connection between Realty's actions and harm to Hydro, and that it was an error to award double damages.
The judge issued detailed factual findings and legal conclusions on the question of c. 93A liability. In reviewing the judge's ruling, "we accept the judge's findings of fact as true unless they are clearly erroneous. Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974)." Kendall v. Selvaggio, 413 Mass. 619, 620 (1992). "On the other hand, to ensure that the ultimate findings and conclusions are consistent with the law, we scrutinize without deference the legal standard which the judge applied to the facts." Id. at 621. "A ruling that conduct violates G.L.c. 93A is a legal, not a factual, determination[,] ... [a]lthough whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact." Klairmont v. Gainsboro Restaurant, Inc., 465 Mass. 165, 171 (2013) (quotation omitted).
Actions brought under G.L.c. 93A have a four-year statute of limitations. G.L.c. 260, § 5A. In determining when the statute of limitations begins to run, the cause of action accrues at the time the plaintiff is injured. Genovesi v. Nelson, 85 Mass. App. Ct. 43, 46 (2014). The discovery rule may toll a statute of limitations until the date that the plaintiff knows or should have known that it was injured, and the rule "may arise ... where a wrongdoer concealed the existence of a cause of action through some affirmative act done with the intent to deceive." Patsos v. First Albany Corp., 433 Mass. 323, 328 (2001), citing Protective Life Ins. Co. v. Sullivan, 425 Mass. 615, 631-632 (1997).
The judge found that Hydro's claim did not arise until at least the end of the first week of January, 2007. The judge found that Realty made its last payment to Hydro on January 14, 2005, although Hydro did not finally cut off electricity until July, 2006.[3] Throughout the fall of 2006, there were ongoing conversations about payment, in which Realty "stalled" and "intentionally misled" Hydro into believing that it would pay the outstanding bills.[4] These conversations culminated in Hydro sending a letter to Realty, offering to reduce the finance charges if Realty paid by the end of the first week of January, 2007. When Realty still did not pay after this final offer date, the judge found that the cause of action had accrued. "Where compliance with a statute of limitations is at issue, factual disputes concerning when a plaintiff knew or should have known of his cause(s) of action are to be resolved by the [fact finder]." Patsos, supra at 329 (quotation omitted). Although a final demand letter may not toll the statute of limitations, see Century Fire & Marine Ins. Corp. v. Bank of New England-Bristol County, N.A., 405 Mass. 420, 421-422 (1989), the judge found that Realty's failure to respond to the final demand letter demonstrated its refusal to negotiate in good faith and put Hydro in a position where its only recourse was litigation. Because Hydro filed suit on December 24, 2010, the judge found that the suit was timely.
We review the judge's determination of a c. 93A violation de novo. See Klairmont, 465 Mass. at 171. Although nonpayment of a debt does not usually justify a finding of c. 93A liability, a pattern of inducing another party to continue to provide services by agreeing to make payments and then failing to pay may justify c. 93A liability. See Community Builders, Inc. v. Indian Motocycle Assocs., Inc., 44 Mass. App. Ct. 537, 559 (1998). Additionally, because one of the goals of G.L.c. 93A, § 11, is to encourage reasonable settlement offers, c. 93A liability may result when a party fails to make a payment or reasonable settlement offer and forces another party to litigate the issue. See R.W. Granger & Sons, Inc. v. J & S Insulation, Inc., 435 Mass. 66, 78 (2001). The judge found that Realty made representations that its electrical needs would grow in order to induce Hydro to continue providing electricity, that Realty continued to suggest that it would make payments, and that Hydro suffered a loss when Realty failed to pay for the electricity. Here, where the judge found that Realty induced Hydro to continue providing it with electricity with no intention of paying and forced Hydro to litigate the unpaid bills, this conduct violated c. 93A. See International Fid. Ins. Co. v. Wilson, 387 Mass. 841, 857 (1983) (liability under c. 93A is "designed to make it 'unprofitable' for a defendant to ignore meritorious claims"). The judge's findings that the suit was timely, that Realty's conduct supported the imposition of c. 93A liability, and that there was a causal connection between Realty's actions and Hydro's injury were not clearly erroneous.[5]
Finally, Realty argues that the judge erred in awarding double damages to Hydro. The decision to award multiple damages is "based on 'the egregiousness of the defendant's conduct.' " Hug v. Gargano & Assocs., P.C., 76 Mass. App. Ct. 520, 527 (2010) (quotation omitted). General Laws c. 93A distinguishes "between violations that consist of unfair or deceptive acts or practices, simpliciter, and those that are knowing or wilful or actuated by bad faith. The former are sanctioned by compensatory single damages. Damages for the latter more serious violations are avowedly punitive." Gore v. Arbella Mut. Ins. Co., 77 Mass. App. Ct. 518, 536 n.21 (2010) (quotation omitted). Here, the judge determined that Realty "knowingly and intentionally failed to pay these bills, and at the same time mislead [sic] [Hydro ] into the false belief the bills would be paid, without any legitimate, good faith reason, thereby ultimately forcing [Hydro ] either to abandon its claims, or to litigate a clearly valid claim." Based on these findings, we cannot discern an abuse of discretion in granting double damages under G.L.c. 93A.[6]
Amended judgment affirmed.
Orders denying motion for new trial and judgment notwithstanding verdict affirmed.

Neither party objected to the portion of the judge's instruction in which he stated that "the first element of a claim for breach of contract has been satisfied. There is no question that the parties entered into a contract."

Realty argues that, for this reason, the claim accrued no later than July, 2006.

A representative of Realty testified that he believed there were discrepancies in the billing, which led to Realty's failure to resolve the unpaid bills. However, the judge also wrote, "I do not at all credit any of [his] testimony on the matter of the unpaid bills."

Realty does not dispute any of the judge's factual findings aside from the finding that Hydro would have established the new interconnection with WMECO "expeditiously" had it known that Realty would fail to pay the bills, and the finding that Realty induced Hydro to continue providing electricity. The judge was entitled to credit testimony that Hydro delayed installing the new interconnection based on Realty's representations and to infer that, were it not for these representations, Hydro would have installed the new interconnection more quickly.

Hydro requests am award of attorney's fees and double costs, pursuant to Mass.R.A.P. 25, as appearing in 376 Mass. 949 (1976). "An appeal is frivolous '[w]hen the law is well settled [and] when there can be no reasonable expectation of a reversal.' We are hesitant to deem an appeal frivolous and grant sanctions except in egregious cases." Symmons v. O'Keeffe, 419 Mass. 288, 303 (1995), quoting from Avery v. Steele, 414 Mass. 450, 455 (1993). Although Realty was ultimately unsuccessful in its appeal, its claims were not frivolous. "Unpersuasive arguments do not necessarily render an appeal frivolous." Avery, 414 Mass. at 455.